IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| SARAH ZITO; ALVARO SARMIENTO, JR.; MARK SHINN; and DANIEL BERMUDEZ, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br> v.<br><br>STRATA EQUITY GROUP, INC. n/k/a STRATA EQUITY GLOBAL, INC.; STRATA AUDUBON, LLC; STRATA VERIDIAN, LLC; PINNACLE PROPERTY MANAGEMENT SERVICES, LLC; WENDI DAMI-VAZQUEZ; JACINTA WILLIAMS; and CONSERVICE, LLC,<br><br>    Defendants. | Civil Action No.: 2:20-cv-3808-MBS<br><br>**DEFENDANTS'**<br>**JOINT MOTION TO DISMISS** |

Pursuant to Fed. R. Civ. P. and 12(b)(6), Defendants hereby move to dismiss the claims set forth in the Complaint.[1]

## **INTRODUCTION**

This putative class action attempts to end-run the jurisdiction of the South Carolina Public

---

[1] While Plaintiffs purport to allege claims against two individual Defendants, Wendi Dami-Vazquez and Jacinta Williams, no proof of service has been filed for either and neither have appeared in this matter. As such, this motion is filed on behalf of all of the Defendants who have been served and have appeared and any reference to "Defendants" or "all Defendants" herein refers to those Defendants.

To avoid the inefficiency of three separate defense groups briefing the same issues, this motion presents the overarching Rule 12 arguments that Defendants contend should result in dismissal of the entire action and are common to all Defendants. Some Defendants will also file individual Rule 12 motions addressed to their individual arguments but will not repeat the arguments set forth herein.

While this motion is not filed on behalf of the individual Defendants Dami-Vasquez or Williams, it appears that the arguments herein would apply equally to those individuals.

1

Service Commission (the "Commission"), which regulates water and sewer utilities in South Carolina. In this action, Plaintiffs seek a judicial declaration, criminal penalties, and money damages against parties involved in the ownership, management, and utility billing for two apartment complexes. Plaintiffs contend that the Defendants are all functioning as unauthorized public utilities and seek a variety of monetary and other remedies for the Defendants' failure to register as public utilities with the Commission and to obtain the Commission's approval for the utility rates in effect at the apartment complexes. Plaintiffs, however, have never presented their complaints to the Commission or sought any of the remedies the Commission can order against an unauthorized utility.

This attempt is procedurally and substantively improper. South Carolina law commits the regulation of public utilities to the exclusive jurisdiction of the Commission. It further provides a clear set of administrative remedies for consumers who believe they are aggrieved by allegedly improper charges by a public utility, and nothing in South Carolina law permits Plaintiffs to avoid that process. To the contrary, it is clear under South Carolina law that when the law provides a clear set of administrative remedies, those remedies and the judicial review obtainable through the appellate process are exclusive, and there is no private right of action in court. Accordingly, Plaintiffs' claims should be dismissed for failure to exhaust their administrative remedies before the Commission.

In addition, even if the Court were to consider Plaintiffs' claims on their merits (and it should not), the Commission has expressly rejected the argument that apartment complexes function as public utilities when, as here, they simply provide a billing function to apartment residents for the utility charges assessed by a traditional water or sewer utility. The Commission's decision on this point flows directly from the text of the utility statute, as apartment complexes do

2

not "furnish" or "supply" water or sewerage within the meaning of the statute. Rather, those services are furnished and supplied by traditional public utilities, and the apartment complexes, the property manager, and the billing company merely provide a billing function for utility services that are furnished and/or supplied by others. Accordingly, Plaintiffs' claims fail as a matter of law and should be dismissed.

## FACTUAL AND REGULATORY BACKGROUND

**A.      The Parties**

Plaintiffs Sarah Zito and Alvaro Sarmiento, Jr. allege that they are tenants of an apartment complex in Hanahan, South Carolina—the Audubon Park Apartments—owned by Defendant Strata Audubon, LLC. (Compl. ¶¶ 1-2.) Plaintiffs Mark Shinn and Daniel Bermudez allege that they are tenants of an apartment complex in Spartanburg, South Carolina—the Grove Apartments—owned by Defendant Strata Veridian, LLC. (Compl. ¶¶ 3-5.) Plaintiffs further allege that Defendant Strata Equity Global, Inc. "owns, controls, and directs" the aforementioned Strata entities (collectively, the "Strata Defendants"). (Compl. ¶ 6.)

Plaintiffs allege that Pinnacle Property Management Services, LLC ("Pinnacle") manages the Audubon Park and Grove apartment complexes for the Strata Defendants. (Compl. ¶ 7.)

Plaintiffs have also named two individuals—Wendi Dami-Vazquez and Jacinta Williams—but the only allegations specific to them are that Vazquez "manages" the Audubon Park property, and Williams "manages" the Grove property. (Compl. ¶¶ 8-9.) No proof of service has been filed as to either individual defendant.

Finally, Plaintiffs allege that Conservice, LLC ("Conservice") "calculates and bills tenants" at the Audubon Park and Grove properties.

3

**B.     The Claims**

Plaintiffs' claims center on the Utility Services Addendum attached to each of the Plaintiffs' leases. (Zito/Sarmiento Addendum, attached hereto as Exhibit A; Shinn Addendum, attached hereto as Exhibit B; Bermudez Addendum, attached hereto as Exhibit C.)[2] Under the Audubon Park addendum, Plaintiffs Zito and Sarmiento agreed to be billed for the landlord's water and sewer expenses under an allocation formula based on each apartment's occupancy. (Ex. A.) Under the Grove addendum, Plaintiffs Shinn and Bermudez agreed to be billed for the landlord's water and sewer expenses under an allocation formula based on each apartment's occupancy and square footage. (Exs. B & C.) All of the addenda provide that further details on the allocation formulae are available upon request, and there is no allegation that any of the Plaintiffs requested further information. (Exs. A, B, and C.) The addenda also provide that the Plaintiffs may be charged certain service and account set-up fees. (*Id.*) Notably, the addenda do not provide the landlord the right to discontinue utility services in the event of non-payment. (*Id.*)

Plaintiffs contend that these addenda render each Defendant a "public utility" under South Carolina law, and that the pass-through utility charges and service fees set forth in the addenda are improper because they have not been approved by the Commission. (*See, e.g.*, Compl. ¶¶ 77-87.) Plaintiffs further contend that they are being "overcharged" under the allocation formulae because other tenants are not honestly reporting the number of occupants and are thereby receiving an artificially low allocation of the charges. (Compl. ¶¶ 25, 32.)

Plaintiffs translate these allegations into five civil causes of action against various Defendants: (1) breach of contract, (2) violation of the South Carolina Residential Landlord and

---

[2] The Court may properly consider documents attached to a motion to dismiss that are integral to the complaint and authentic. *Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006). All of the leases attached here are integral to the Complaint and Plaintiffs relied on them throughout the Complaint. Indeed, Plaintiffs brought a cause of action for violation of the leases.

4

Tenant Act, (3) negligence, (4) unjust enrichment, and (5) unfair trade practices.  In addition, Plaintiffs seek a declaratory judgment and permanent injunction, and they seek the imposition of criminal penalties under the South Carolina utility laws.  All of these causes of action and requests for relief are based on the central contention that each Defendant is a "public utility" and is charging utility rates that have not been approved by the Commission.

C.     **Regulation of Public Utilities in South Carolina**

Because Plaintiffs' claims are based entirely on South Carolina utility law, it is helpful to begin with a background discussion of how South Carolina defines and regulates water and sewer utilities.  Under South Carolina law, a "public utility" is defined to include "every corporation and person furnishing or supplying . . . water, sewerage collection, sewerage disposal, . . . to the public, or any portion thereof, for compensation."  S.C. Code Ann. § 58-5-10(4).  The South Carolina Public Service Commission (again, the "Commission") "is vested with power and jurisdiction to supervise and regulate the rates and service of every public utility in this State and to fix just and reasonable standards, classifications, regulations, practices, and measurements of service to be furnished, imposed, or observed, and followed by every public utility in this State."  S.C. Code Ann. § 58-3-140.  Any entity that wishes to operate as a water or sewer utility under this definition is required by South Carolina law to first obtain from the Commission a certificate of public convenience and necessity.  S.C. Code Ann. Reg. §§ 103-504, 103-704.  Further, a utility may not charge for water or sewer services unless and until the Commission has approved its rates.  S.C. Code Ann. Reg. §§ 103-503, 103-703.

Under the utility laws, the Commission has jurisdiction to decide consumer complaints against public utilities and to remedy situations in which a consumer is overcharged or improperly charged for water and sewer services.  S.C. Code Ann. § 58-5-270; S.C. Code Ann. Reg. §§ 103-

533, 103-733.  This jurisdiction includes the power to decide whether an entity is operating as a public utility and to order entities that so qualify to comply with the utility laws.  *See, e.g.*, *In re: Rule to Show Cause on Submeterers*, Order No. 2003-214, 2003 WL 23325952 (S.C.P.S.C. April 15, 2003) (hereinafter, "*In re: Submeterers*") (considering whether entities should be ordered to obtain certificates of public convenience and necessity) (attached hereto as Exhibit D).

Orders of the Commission are subject to judicial review by direct appeal to the Supreme Court of South Carolina when the Commission sets utility rates, and by direct appeal to the South Carolina Court of Appeals in all other cases.  S.C. Code Ann. §§ 14-8-200(a) & (b)(2), 58-5-340.

In addition to the Commission, the General Assembly created the South Carolina Office of Regulatory Staff ("ORS") as a separate state agency to represent the public interest in all proceedings before the Commission.  S.C. Code Ann. § 58-4-10, *et seq.*  ORS has the power to investigate consumer complaints and make recommendations for handling to the Commission.  S.C. Code Ann. § 58-4-50(5).  ORS may (and often will) initiate proceedings in the Commission in its own name when it believes the public interest is so served.

In the late 1990s / early 2000s, ORS and the Commission gave serious consideration to whether apartment complexes and similar landlords qualify as "public utilities" when they pass water and sewer charges along to their tenants.  During that time, ORS brought multiple actions before the Commission against apartment complexes, contending that they were public utilities and were therefore required to seek approval of their rates and to otherwise operate as public utilizes subject to the statutory and regulatory scheme referenced above.  The history of this litigation is recited in *In re: Submeterers*.  (Ex. D.)

In brief, in 1999, the Commission issued a general ruling that apartment complexes function as public utilities and are subject to Commission regulation when they submeter and bill

residents for their portions of the overall water and wastewater charges applicable to the complex. (Order 1999-307, attached hereto as Exhibit E.)  Recognizing, however, that the utility laws and regulations in effect were poorly suited to regulating apartment complexes, the Commission commenced a rulemaking process to determine how such complexes should be certified and regulated.  (*Id.* at 5.)  In 2000, however, the Commission held that determination in abeyance pending further review.  (Order 2000-436, attached hereto as Exhibit F.)

After several years of litigation, the Commission issued *In re: Submeterers*, in which the Commission held that a landlord does not "furnish or supply" water or wastewater within the meaning of S.C. Code Ann. § 58-5-10(4) when it simply bills residents for water and wastewater supplied by a traditional utility.  (Ex. D.)  Therefore, apartment complexes and their property managers and billing companies are **not** public utilities subject to South Carolina utility laws and regulations.  (*Id.*)  Notably, this decision was not appealed and remains the law in South Carolina.

In this case, Plaintiffs do not allege that they have made any attempt to address their claim that Defendants are operating as unauthorized public utilities with the Commission or with ORS, and Defendants are aware of no such attempts.

## **LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under this standard, the plaintiff must plead facts that permit the court, based on "its judicial experience and common sense, . . . to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  Moreover, although the court must accept all of the complaint's factual allegations as true, this tenet "is inapplicable to legal conclusions."  *Id.* at

678. Questions of law may be resolved by the Court on a motion to dismiss, and the motion should be granted if the plaintiff's claims "are based on an unsupportable legal theory." *Davis v. Dillard Nat'l Bank*, No. 1:02-CV-00546, 2003 WL 21297331, at *2 (M.D.N.C. Jun. 4, 2003) (internal citations and quotations marks omitted).

## ARGUMENT

### A. Plaintiffs Have Failed to Exhaust Their Administrative Remedies Before ORS or the Commission, and Those Remedies Are Exclusive

#### 1. Exhaustion

Plaintiffs failed to exhaust their exclusive administrative remedies as required under the law. It is axiomatic in South Carolina that where the General Assembly has provided an administrative remedy, an allegedly aggrieved person may not seek judicial relief before exhausting the administrative process. *See, e.g.*, *Meredith v. Elliott*, 247 S.C. 335, 343, 147 S.E.2d 244, 248 (S.C. 1966) ("It is well settled in this State that generally the exhaustion of administrative relief available to a party is necessary before the party can seek redress in the courts."). This rule has been specifically applied to the Public Service Commission, and counsel has not located an appellate decision in which a court declined to require exhaustion before the Commission. *See, e.g.*, *Pullman Co. v. Pub. Serv. Comm'n*, 234 S.C. 365, 368, 108 S.E.2d 571, 572 (S.C. 1959) (affirming dismissal of action for failure to exhaust before the Public Service Commission). To the contrary, South Carolina courts routinely dismiss claims when the plaintiff has not exhausted the available administrative remedies across numerous areas of law and state agencies. *See, e.g.*, *Garris v. Gov. Bd. of the S.C. Reinsur. Fac.*, 319 S.C. 388, 390-91, 461 S.E.2d 819, 821 (S.C. 1995) (affirming dismissal of claim by insurance agent whose designated agent status was revoked by the S.C. Reinsurance Facility for failure to exhaust because "[r]elief is not generally available

8

to one who has not exhausted administrative remedies"); *Hyde v. S.C. Dep't of Mental Health*, 314 S.C. 207, 208, 442 S.E.2d 582, 582 (S.C. 1994) (affirming dismissal of whistleblower claim due to employee's failure to exhaust remedies under the State Employees Grievance Procedures Act because "[w]here an adequate administrative remedy is available to determine a question of fact, one must pursue the administrative remedy or be precluded from seeking relief in the courts"); *Stanton v. Town of Pawley's Island*, 309 S.C. 126, 128, 420 S.E.2d 502, 503 (S.C. 1992) (affirming dismissal of building permit claim because owner did not exhaust administrative remedies by appealing to town council); *Moore v. Sumter County Council*, 300 S.C. 270, 273-74, 387 S.E.2d 455, 457-58 (S.C. 1990) (affirming dismissal of challenge to land use decision because owner had not exhausted remedies available before county council).

2. **No Private Right of Action**

Moreover, when (as here) the General Assembly has not expressly created a private right of action for the violation of a statute, such a right may only be implied if it is clear from the language of the statute that the legislature so intended. *Dorman v. Aiken Communications, Inc.*, 303 S.C. 63, 66, 398 S.E.2d 687, 689 (S.C. 1990) ("The legislative intent to grant or withhold a private right of action for violation of a statute or the failure to perform a statutory duty, is determined primarily from the language of the statute." (internal citations and quotation marks omitted)). Statutes enacted for the benefit of the general public, such as the Certificate of Need Act, the Landlord/Tenant Act, and the statutes regulating prison labor, rather than for the special benefit of certain people, do not create private rights of action. *See, e.g.*, *Dema v. Tenet Physician Servs.-Hilton Head*, 383 S.C. 115, 121-22, 678 S.E.2d 430, 432 (S.C. 2009) (CON Act); *Overcash v. S.C. Elec. & Gas Co.*, 364 S.C. 569, 576, 614 S.E.2d 619, 622 (S.C. 2005) (regulation of navigable waters); *Adkins v. S.C. Dep't of Corr.*, 360 S.C. 413, 418, 602 S.E.2d 51, 54 (S.C. 2004)

9

(prisoner labor); *Happy Rabbit v. Alpine Utilities, Inc.*, No. 2010-UP-558, 2010 WL 10088255 (S.C. Ct. App. Dec. 23, 2010) (Landlord/Tenant Act).

Further, when it is clear from the language and structure of the statute that the legislature intended to create an administrative remedy, rather than a private right of action, no such private right of action is permitted. For example, in *Masterclean, Inc. v. Star Ins. Co.*, 347 S.C. 405, 556 S.E.2d 371 (S.C. 2001), the South Carolina Supreme Court held that the Insurance Trade Practices Act, S.C. Code Ann. §§ 38-57-10, *et seq*., and the Claims Practice Act, S.C. Code Ann. §§ 38-59-20, *et seq*., do not create private rights of action because the statutes "manifest[] legislative intent to create an administrative remedy and not a private right of action." *Id.* at 414, 556 S.E.2d at 377. Both of those statutes specifically create an administrative process whereby the Director of the Department of Insurance can hear and determine statutory violations. S.C. Code Ann. §§ 38-57-200, 38-59-30. Accordingly, the administrative process is exclusive, and no private right of action exists. *Masterclean*, 345 S.C. at 414, 556 S.E.2d at 377.

Here, the utility laws specifically provide two avenues of administrative relief for allegedly aggrieved consumers. ***First***, a consumer may present her concerns to ORS, which can assist in resolving the matter with the utility or file a complaint in its own name before the Commission. S.C. Code Ann. § 58-4-50(5). ***Second***, if a consumer is dissatisfied with ORS's handling of the matter, the consumer can file her own action before the Commission and is entitled to an evidentiary hearing and an administrative decision, which may then be appealed to the South Carolina Court of Appeals. S.C. Code Ann. §§ 58-5-270, 14-8-200(a) & (b)(2). As noted, the Commission has broad authority to correct any misconduct by a public utility. S.C. Code Ann. § 58-5-270; S.C. Code Ann. Reg. §§ 103-533, 103-733. Judicial review of orders issued by the Commission is by the South Carolina Supreme Court for rate setting matters and by the South

Carolina Court of Appeals for other matters. Under this well-defined statutory scheme, there is no procedural scenario in which the question raised by Plaintiffs' Complaint—whether Defendants are acting as "public utilities" under South Carolina law—is answered in a trial court setting.

Plaintiffs have not pleaded any facts suggesting that their failure to exhaust is somehow excused, nor have they pleaded any facts suggesting that they have made any attempt at all to avail themselves of these remedies. Moreover, it is clear from the text and structure of the utility laws that the General Assembly intentionally created a detailed and comprehensive administrative process to adjudicate and redress consumer concerns that a utility is violating the law. It is equally clear from both the statute and from *In re Submeterers* that the Commission has authority to determine whether an entity is or is not functioning as a public utility, and to redress any unauthorized operations. Nothing in the text of the utility laws remotely suggests that the General Assembly intended to create a judicial private right of action or any other method for avoiding the administrative relief available through ORS and the Commission. Accordingly, as in *Masterclean*, the administrative remedies are exclusive, and Plaintiffs' claims should be dismissed for failure to exhaust them.

**B.     The Commission Has Ruled that Apartment Complexes Are Not Public Utilities**

Alternatively, if this Court believes that the Plaintiffs were not required to submit the question of whether or not the Defendants are public utilities to the Commission, and that this Court can decide this issue, then all of the claims suffer from the same substantive problem. Namely, they advance a theory of law—that apartment complexes operate as public utilities—that the Commission has expressly rejected. As noted above, the key statutory characteristic of a public utility is that it "furnish[es]" or "suppl[ies]" water or sewer. S.C. Code. Ann. § 58-5-10(4). In *In re Submeterers*, the Commission held that apartment complexes are not public utilities because

they "do not actually 'furnish or supply' the commodity [water or sewer], but merely measure the amount of flow of water or wastewater and provide billing functions." (Ex. D.) This same rationale applies to property managers and billing companies.

The only difference—and it is a difference without a distinction—between the facts recited in *In re Submeterers* and those alleged in this case is that the apartment complexes at issue here (and their property manager and billing company) use an allocation formula to apportion water and sewer expenses based on occupancy and/or square footage, rather than submetering each individual unit. This difference is irrelevant because of the allegations of the Complaint, the logic of *In re Submeterers*, and the text of the utility statute. Indeed, the Complaint itself admits that submetering and applying an allocation formula are equivalent practices, calling the latter the "allocation version of submetering." (Compl. ¶ 78.)

More fundamentally, the core logic of *In re: Submeterers* is that the utility laws are designed to regulate traditional water and wastewater facilities with a monopoly on utility supply to a particular area. (Ex. D. at 5-6.) They are not designed to regulate individual apartment complexes or their property managers or billing companies, and other states generally do not treat apartment complexes as public utilities. (*Id.* at 7, 10.) Indeed, the Commission noted that some states choose to regulate apartment utility billing via their state landlord/tenant laws, but do not purport to regulate apartment complexes as utilities. (*Id.* at 5.) The Commission further noted that there is a fundamental disconnect between the utility laws, which expressly allow utilities to disconnect services when a customer does not pay, and the landlord/tenant laws, which do not allow a landlord to withhold running water regardless of non-payment. (*Id.*) The core logic that apartment complexes do not operate like traditional utilities applies whether the apartment complex installs submeters or simply utilizes an allocation formula, as the utility laws remain

12

poorly tailored to regulate apartment complexes.

Finally, the text of the utility laws supports the conclusion that an apartment complex applying an allocation formula is not a public utility because neither the apartment complex nor its property manager or billing company, is "furnishing" or "supplying" water or sewer. According to Merriam-Webster, "furnish" and "supply" are synonyms, and they mean, "to make available for use" or "provide." (Dictionary Definitions, attached hereto as Exhibit G.) These words imply the conveyance of something that the furnisher or supplier possesses. However, as the Commission noted, an apartment complex cannot "furnish" or "supply" water or sewer because it does not "take possession of the water," nor could a property manager or billing company. (Ex. D at 10.) Rather, the water is owned and then furnished to the tenant by a traditional water utility. At no point does the apartment complex, property manager, or a billing company exercise possession in any traditional sense over the water, and, even if it had some means of controlling the flow of the water (and nothing suggests that it does), the apartment complex is legally prohibited from turning the water off or withholding sewerage. S.C. Code Ann. § 27-4-440(4) & (5). Because the apartment complex cannot legally exercise dominion, control, or possession over the tenant's water supply or sewer service, it simply does not fit the definition of one who "furnishes" or "supplies" these services. Accordingly, the same textual interpretation applied in *In re Submeterers* applies here, and the apartment complexes, the property manager, and the billing company at issue are not public utilities as a matter of law. Plaintiffs' claims, therefore, should be dismissed.

## CONCLUSION

For the foregoing reasons, all of Plaintiffs' claims should the dismissed.[3]

---

[3] If the Court dismisses Plaintiffs' claims for their failure to exhaust administrative remedies before the Commission, then the dismissal should be without prejudice to Plaintiffs' ability to attempt to

13

Dated:  November 30, 2020                    GORDON & REES LLP

By   */s/Henry W. Frampton, IV*
Henry W. Frampton, IV (Fed. 10365)
E-mail: hframpton@grsm.com
Peter G. Siachos (Fed. 07591)
E-mail: psiachos@grsm.com
Victoria T. Kepes (Fed. 13000)
E-mail: vkepes@grsm.com
40 Calhoun Street, Suite 350
Charleston, SC  29401
Telephone: 843.278.5900
*Attorneys for Defendant Pinnacle Property Management Services, LLC*

*/s/Kevin A. Hall*
Kevin A. Hall (Fed. 5375)
E-mail: kevin.hall@wbd-us.com
Womble Bond Dickinson (US) LLP
1221 Main Street, Suite 1600
Columbia, SC  29201
Telephone: 803.454.6504
*Attorney for Conservice, LLC*

*/s/Kevin K. Bell*
Kevin K. Bell (Fed. 5854)
E-mail: kbell@robinsongray.com
Robinson Gray Stepp & Laffitte, LLC
P.O. Box 11449
Columbia, SC  29211
Telephone: 803.227.1111
*Attorney for Strata Equity Group, Inc. n/k/a Strata Equity Global, Inc., Strata Audubon, LLC, and Strata Veridian, LLC*

---

proceed before the Commission.  However, if the Court dismisses Plaintiffs' claims based on the substantive conclusion that the allegations are insufficient to show that Defendants operate as public utilities as defined by South Carolina law, then the dismissal should be with prejudice, as this is a conclusion of law, and there is no amendment to the pleadings consistent with Rule 11 that would alter the conclusion.