IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| SARAH ZITO; ALVARO SARMIENTO, JR.; MARK SHINN; and DANIEL BERMUDEZ, on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br> v.<br><br>STRATA EQUITY GROUP, INC. n/k/a STRATA EQUITY GLOBAL, INC.; STRATA AUDUBON, LLC; STRATA VERIDIAN, LLC; PINNACLE PROPERTY MANAGEMENT SERVICES, LLC; and CONSERVICE, LLC,<br><br>     Defendants. | Civil Action No.: 2:20-cv-3808-BHH<br><br>**DEFENDANT PINNACLE PROPERTY MANAGEMENT SERVICES, LLC'S REPLY IN SUPPORT OF ITS SUPPLEMENTAL MOTION TO DISMISS** |

Defendant Pinnacle Property Management Services, LLC ("Pinnacle") hereby respectfully submits this Reply in Support of its Supplemental Motion to Dismiss.

## **INTRODUCTION**

Plaintiffs purport to assert various causes of action against Pinnacle, but fail to make any specific allegations to support the conclusion at the very heart of each cause of action—that Pinnacle is a public utility—because Plaintiffs are unable to do so. In addition, the Complaint suffers from a series of global and specific defects that require dismissal of all claims against Pinnacle.

*First*, Pinnacle cannot be liable under the Complaint because every cause of action relies on the conclusion that Pinnacle is a "public utility," and Pinnacle clearly is not. In addition to the reasons set forth in the Joint Motion and Reply, Pinnacle is not a public utility because the

1

Complaint fails to allege that Pinnacle received compensation for any utility services.

*Second*, the Complaint is subject to dismissal under *Iqbal* and *Twombly* because it contains impermissible "shot-gun" pleadings, lumping all Defendants together without spelling out which acts are attributable to which Defendant.

*Finally*, each of the individual causes of action asserted against Pinnacle are also subject to dismissal for the following reasons, none of which Plaintiffs' Response casts any doubt upon: (1) Pinnacle is not a "landlord" under the Residential Tenant Landlord Act; (2) Plaintiffs cannot seek criminal penalties in a civil court; (3) Pinnacle owes no duty to Plaintiffs; and (4) the Complaint contains no factual allegations supporting a conclusion that Pinnacle engaged in any unfair or deceptive practice.

For all of these additional reasons, each of Plaintiffs' causes of action should be dismissed with prejudice as against Pinnacle.

## ARGUMENT

### A.  Pinnacle Is Not a Public Utility Because There Is No Allegation that It Receives Compensation from Tenants for Utility Charges

As demonstrated in its Motion and in the Joint Motion to Dismiss, Pinnacle is not a public utility as a matter of law, and Plaintiff has done absolutely nothing to refute this.  In addition to those reasons set forth in the Joint Motion, Pinnacle also does not fit the definition of a public utility under the public utility statutes because Plaintiffs have not alleged that Pinnacle received any compensation from tenants for the alleged utility charges, which is expressly required by the statutory definition of a public utility: "The term 'public utility' includes every corporation and person delivering . . . water, sewerage collection, sewerage disposal, . . . or any of them, to the public, or any portion thereof, **for compensation**."  S.C. Code Ann. § 58-5-10(4) (emphasis added).  As Plaintiffs have made neither factual allegations nor argument that Pinnacle received

compensation for allegedly acting as a utility, Plaintiffs have effectively conceded that Pinnacle is not a public utility.

**B.     Plaintiffs Have Not Alleged Specific Facts Demonstrating Pinnacle's Liability**

The claims against Pinnacle should also be dismissed because the Complaint contains nothing more than improper group pleadings that make collective allegations against Defendants jointly without specifying what a particular Defendant did wrong. It is well-settled that a plaintiff may not simply lump one defendant with another, allege liability against "Defendants," and allege nothing further. *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015) (holding that plaintiffs "cannot assemble some collection of defendants and then make vague, non-specific allegations against all of them as a group") (citations and quotations omitted). Instead, a plaintiff must allege *facts* that plausibly entitle her to relief against each specific defendant. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Here, the one and only allegation specific to Pinnacle is that it "manages the Audubon Property and Veridian Property for Strata Audubon and Strata Veridian including entering into leases and administering leases for Strata Audubon and Strata Veridian." (Compl. ¶ 7.) Plaintiffs attempt to argue that the Complaint contains other allegations specific to Pinnacle, but have not actually pointed to any such allegations (since none exist). Instead, Plaintiffs point to allegations that reference "agents" of other Defendants or allegations that refer only to "Defendants," generally. (*See e.g.* Compl. ¶¶ 26, 27, 42.)[1] In doing so, Plaintiffs have indeed served only to highlight one of the fatal flaws of the Complaint—the improper group pleadings. Thus, the Court

---

[1] Plaintiffs also point to allegations that refer to the two individual Defendants Wendi Dami-Vazquez and Jacinta Williams. As an initial matter, the Complaint does not allege that these individuals were employees or agents of Pinnacle, it merely states that they entered it and administered leases. (Compl. ¶¶ 9, 10.) Further, Plaintiffs have voluntarily dismissed the individual Defendants from the case.

3

should dismiss the claims against Pinnacle.

**C.    Each of Plaintiffs' Claims for Monetary Relief Is Independently Defective**

Beyond the global defects in the Complaint, each of the claims for monetary relief is also defective for independent reasons as set forth below, and Plaintiffs have done nothing to undermine this assertion.

### 1.    Violation of the Residential Landlord and Tenant Act ("RLTA")

Pinnacle cannot be liable under the Residential Landlord and Tenant Act because Pinnacle is not a landlord. The RLTA only applies to "landlords," defined as "the owner, lessor, or sublessor of the premises, and it also means a manager of the premises who fails to disclose as required by Section 27-40-420." S.C. Code Ann. § 27-40-210(6).  Section 27-40-420, in turn, provides in relevant part:

> A landlord or any person authorized to enter into a rental agreement on his behalf shall disclose to the tenant in writing at or before the commencement of the tenancy the name and address of an owner of the premises **or a person authorized to act on behalf of the owner as agent**, inter alia, for purposes of service of process and receiving or receipting notices or demands.

(emphasis added).

The leases at issue in this case comply with this disclosure requirement as a matter of law. The first page of each lease plainly states the names of the parties—the tenant and either Strata Veridian LLC or Strata Audubon, LLC.  (*See* Leases, attached to Pinnacle's Mot. as Ex. A [hereinafter, "Leases."])  The seventh page of each lease then provides an "Address and phone number of owner's representative for notice purposes." (*Id.*)

### A. The Leases comply with the statutory disclosure requirements

Plaintiffs appear to contend that the address provided on page seven of the Leases is somehow deficient since, according to Plaintiffs, it is an address of owner's representative. (Pl.

4

Memo. at 6.) Plaintiffs appear to contend that the statute requires disclosure to either contain the owner's name and the owner's address or the owner's representative's name and the representative's address. In doing so, Plaintiffs' misread the clear language of the statute, ignore the purpose behind it, and somehow fail to recognize that the Leases comply even with their erroneous reading of the statute.

Plaintiffs' reading of the statute contradicts the clear purpose behind it—to provide notice to tenants of where to send complaints. "All rules of statutory construction are subservient to the one that the legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in light of the intended purpose of the statute." *State v. Sweat*, 386 S.C. 339, 350, 688 S.E.2d 569, 575 (S.C. 2010) (quotations omitted); *see also id.* at 351, 688 S.E.2d at 575 ("Courts will reject a statutory interpretation which would lead to a result so plainly absurd that it could not have been intended by the Legislature or would defeat the plain legislative intention." (citations omitted)). It is clear from the plain language that the purpose of S.C. Code Ann. § 27-40-420 is to ensure that tenants have notice of where to send complaints or otherwise send notice of action. *See also* Lawrence R. McDonough, "Then and Now: The Uniform Residential Landlord and Tenant Act and the Revised Residential Landlord and Tenant Act—Still Bold and Relevant?" 35 U. Ark. Little Rock L. Rev. 975, 982 (2013) (citing Uniform Residential Landlord and Tenant Act § 2.102, cmt., 7B U.L.A. 325) ("The purpose of the landlord's disclosure requirement 'is to enable the tenant to proceed with the appropriate legal proceeding, to know to whom complaints must be addressed, and failing satisfaction, against whom the appropriate legal proceedings may be instituted.'"). The Leases clearly do just that; they provide the tenants with notice as to who is responsible for complaints—the owner—and where to send notice of such complaints—the address provided.

Even if Plaintiffs' absurd reading of the statute was correct (and obviously it is not), the disclosures made in the Leases still comply with the statute for two reasons. First, the owner here is an entity, not an individual, and so the address of its representative or agent is the address of the entity. *See* S.C. Code Ann. § 33-5-101 *et seq.* (requiring entities to provide the address of a registered **agent** for purposes of contacting an entity, which may or may not be one of the entity's places of business). Second, the Complaint alleges that the two addresses in the Leases are the addresses of the apartment complexes owned by Strata Veridian LLC and Strata Audubon, LLC, and are, therefore, the addresses of the respective owners listed in the Leases. (*Compare* Compl. ¶¶ 2, 5, *with* Leases at 8, 47, 91 attached as Ex. A to Pinnacle's Mot.) Pinnacle, therefore, is not liable under the RLTA because the disclosures in the Leases comply with the disclosure requirements under any reading of the statute.

B.  Pinnacle is not a "lessor" under the RLTA

Plaintiffs also erroneously argue that Pinnacle is a "landlord" under the RLTA because Pinnacle is a "lessor." The Leases themselves, however, preclude any such argument. S.C. Code Ann. § 27-40-210 defines a landlord as: "the owner, lessor, or sublessor of the premises, and it also means a manager of the premises who fails to disclose as required by Section 27-40-420." Plaintiffs argue that the term "lessor" applies to Pinnacle, because the term "lessor" incorporates every person executing a lease. This argument fails on many levels.

First, where a statute contains a specific provision applicable to the facts at issue, that provision applies in lieu of any general provision that might be otherwise applied. *Wooten ex rel. Wooten v. S.C. Dept. of Transp.*, 333 S.C. 464, 468, 511 S.E.2d 355, 357 (S.C. 1999). Here, the specific provision of the statute provides that a manager is only a landlord if they fail to comply with the statutory disclosure requirements. Pinnacle is alleged to have "managed" the apartment

6

complexes at issue here. (Compl. ¶ 7.) Thus, the specific statutory provision addressing the managers of properties is clearly the applicable provision and, as described above, the Leases contain the proper disclosures precluding liability.

Second, this argument fails because Pinnacle is not a "lessor." In support of this argument, Plaintiffs provide the definition of "lessor" from Black's Law Dictionary as, "[o]ne who conveys real or personal property by lease." This argument fails because Pinnacle is not a party to the leases and did not enter into the leases as Plaintiffs claim, as is evident on the face of the Leases.[2] *See Prieto, et al. v. Nirenblatt, NirenBlatt & Hoffman, LLP, et al.*, No. 2014CP1007473, 2017 WL 4772940 (S.C. Com. Pl. Mar. 27, 2017) (holding that certain defendants were not "landlords" under the RLTA where the lease provided the name of another defendant as entering into the lease and was signed on behalf of that defendant). The fact that an employee of Pinnacle signed the leases does not mean, as Plaintiffs claim, that Pinnacle is a party to the lease or "entered into" it. In fact, the leases provide signature blocks for the "Owner's Representative," indicating that the signature of the representative is on behalf of the Owner. Pinnacle is not named in the Leases in any capacity and thus did not "convey" the property by lease. As such, any signature was a signature on behalf of the owner, meaning the respective owners that entered into the Leases, not Pinnacle. For these reasons, Pinnacle is not a "lessor" and so cannot be liable under the RLTA.

### 2.   Criminal Penalties

---

[2] Plaintiffs have not disputed the authenticity of the Leases and have relied on them to present arguments without comment. As such, this Court can properly consider them and any inconsistencies between the Leases and the Complaint should be resolved in favor of the Leases. *See Phillips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (holding that the Court may consider documents "attached to the motion to dismiss, so long as they are integral to the complaint and authentic"); *Jeffrey M. Brown Assocs. V. Rockville Ctr., Inc.*, 7 Fed. Appx. 197, 202 (4th Cir. 2001) (the Court "need not accept as true . . . conclusory allegations in the complaint that are contradicted by the attachments"); *see also Benfield Elec. Co. v. Keybank*, No. 1:09-cv-2071, 2009 U.S. Dist. LEXIS 12009, at *7-8 (D. Md. Dec. 23, 2009).

Pinnacle cannot be liable as a "public utility" for criminal penalties by virtue of a private civil action, nor is Pinnacle a "public utility." Plaintiffs allege they are entitled to the penalties set forth in S.C. Code Ann. § 58-5-370, which provides that a public utility is guilty of a misdemeanor by charging unauthorized rates. This cause of action fails for two reasons. First, as demonstrated above and in the Motion, Pinnacle is not a public utility. Second, Plaintiffs have not and cannot allege that Pinnacle has been found guilty of such a misdemeanor and so any claim for damages thereunder is plainly subject to dismissal. Plaintiffs do not refute this argument and so concede this cause of action must be dismissed.

### 3. Negligence

Plaintiffs cannot allege a viable claim of negligence because they cannot establish any duty owed by Pinnacle to Plaintiffs. As demonstrated more fully in the Motion, a negligence claim fails as a matter of law unless the defendant owes the plaintiff a legal duty of care with respect to the matter at issue. *Regions Bank v. Schmauch*, 354 S.C. 648, 668-69, 582 S.E.2d 432, 443 (S.C. Ct. App. 2003) (rejecting claim that bank had a duty of care with respect to her decision to guarantee a loan). In their response, Plaintiffs appear to argue the existence of some duty derived from either Pinnacle's status as the property manager, the RLTA, or the Leases, but each of these is without merit.

#### A. No general duty to act

As to the first argument, the Complaint does not contain a single allegation that could be construed, even by the most generous reader, to allege that Pinnacle "induced" Plaintiffs to sign the Leases. Even if there was, Pinnacle has no duty to the general public not to encourage members of the public to enter into a lease. *Dennis by Evans v. Timmons*, 313 S.C. 338, 437 S.E.2d 138 (Ct. App. 1993) (no common law duty to act). Plaintiffs have not identified and counsel has not located

8

any cases that create a duty running from a property manager to prospective tenants in this respect. Instead, Plaintiffs cite to cases discussing negligence in the context of a mental healthcare facility, *Madison ex rel. Bryant v. Babcock Center, Inc.*, 371 S.C. 123, 135, 638 S.E.2d 650, 656 (S.C. 2006) and in the context of medical malpractice, *Hoeffner v. The Citadel*, 311 S.C. 361, 368, 429 S.E.2d 190, 194 (1993), neither of which can be imputed to a property manager. To the extent Plaintiffs are attempting to impute some professional standard under a professional malpractice claim, neither the Complaint nor case law supports such a duty. *See Greenwood Land Co. v. Omnicare, Inc.*, No. 09-686, 2011 WL 33027, at *3-4 (W.D. Penn. Jan. 5, 2011) (declining to expand professional malpractice to encompass a real estate property manager). Thus, Plaintiffs have not and cannot allege a general duty to decline to offer leases to the general public.

### B. No duty based on the RLTA

To the extent Plaintiffs argue that the duty arises out of the RLTA, this argument also has no merit. The RLTA cannot stand as the basis for any duty to Plaintiffs because Pinnacle is not a landlord as described above, and the RLTA, therefore, does not apply to Pinnacle. *See Douglass ex rel. Louthian v. Boyce*, 336 S.C. 318, 325, 519 S.E.2d 802, 805-06 (S.C. Ct. App. 1999) (to create a duty arising from a statute, the "harm" alleged must be that which the statute was enacted to prohibit). Further, the General Assembly's decision to specifically exclude managers from the requirements under that Act clearly indicates an intent not to hold managers liable under this Act, regardless of the label Plaintiffs assign to their claim. For these reasons, Plaintiffs cannot base a claim of negligence against Pinnacle on the RLTA.

### C. No duty derived from the Leases

Finally, to the extent Plaintiffs attempt to create a duty based on the Leases, this argument also fails. As an initial matter, under certain circumstances, "[a] tort-feasor may be subjected to

9

tort liability for injury to a third party arising out of **the tort-feasor's contractual relationship with another**, despite the absence of privity between the tort-feasor and the third party." *Barker v. Sauls*, 289 S.C. 121, 122, 345 S.E.2d 244, 244 (S.C. 1986) (emphasis added).[3] However, Plaintiffs have not alleged any contract to which Pinnacle is a party that creates a duty to Plaintiffs. Instead, Plaintiffs attempt to create a duty under a contract to which Pinnacle is not a party. The law simply does not allow them this manipulation.

In support of the argument that a duty arises from the Leases, Plaintiffs appear to argue Pinnacle had a duty to "verify" the occupants of various apartments. As an initial matter, Plaintiffs have not alleged the existence of such a duty. Instead, Plaintiffs have alleged that the "agents" of other Defendants were informed that there were additional occupants in various apartments. (Compl. ¶ 26.) As explained in the Motion, Pinnacle is only alleged to have managed the complexes. Further, there is nothing in the Leases themselves (to which Pinnacle was not a party) that promises anything with respect to the handling of other tenants' alleged dishonesty. (*See* Leases.) Even if Pinnacle did owe some duty to abide by the Leases (and clearly it did not), failing to police the apartments and punish tenants who, according to Plaintiffs, failed to report the number of occupants would not be a violation of that fictional duty.

Further, even if it was true that the Leases created some duty on the part of Pinnacle, a third party, (and they do not), South Carolina law does not permit an action in tort where the parties'

---

[3] In support of this ill-conceived argument, Plaintiff cites *S.C. Port Authority v. Booz-Allen Hamilton, Inc.*, 289 S.C. 373, 346 S.E.2d 324 (S.C. 1986). It is notable that in that opinion, the South Carolina Supreme Court made a very specific finding of "a duty to use due care, running from a consultant to the commercial competitor who is being critiqued, arises when the consultant undertakes to objectively analyze and compare the attributes of commercial competitors for the purpose of giving one a market advantage to another." *Id.* at 376-77, 346 S.E. at 326. The instant case involves neither a contract to which Pinnacle is a party, nor a consultant critiquing a commercial competitor. As such, *S.C. Port Authority* has absolutely no relevance to the instant case.

rights are established by contract and the result is purely economic loss. *See Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc.*, 320 S.C. 49, 54, 462 S.E.2d 85, 88 (S.C. 1995). Plaintiffs attempt to do just that by claiming that Pinnacle owes a duty to tenants of a complex it managed arising out of the Leases. In the Response, Plaintiffs have not made any argument that any damages other than economic loss is alleged.

For all of these reasons, Plaintiffs' claim for negligence fails as a matter of law and is subject to dismissal for failure to state a claim.

### 4. Unfair Trade Practices

Plaintiffs' South Carolina Unfair Trade Practices Act ("SCUTPA") claims also fail because they failed to allege any facts to support such a claim against Pinnacle and because an individual cannot bring a SCUTPA claim in a representative capacity. Plaintiffs allege that Defendants violated SCUTPA by "[e]ntering into leases providing for illegal water and sewerage allocation rates and fees" and charging such rates and fees. (Compl. ¶ 121.) As described above, Pinnacle is not a party to the allegedly "illegal" Leases and Plaintiffs do not plausibly allege that it is, nor can they. Further, Plaintiffs' have not provided any explanation as to how Pinnacle's role in the management of the apartment complexes constitutes an "unfair" or "deceptive" practice. In their Response, Plaintiffs merely conclude that it is, citing to the general proposition that a claimant can bring a claim under SCUTPA for unfair and deceptive trade practices. (*See* Pl. Memo. at 3.) Without factual allegations plausibly establishing that Pinnacle was responsible for the allegedly illegal charges, Plaintiffs' contention that Pinnacle engaged in an unfair trade practice is nothing more than pure speculation and should be dismissed.

Moreover, SCUTPA specifically prohibits claims brought in a representative capacity and Plaintiffs have not argued otherwise in their Response. *See* S.C. Code Ann. § 39-5-140 ("Any

person who suffers any ascertainable loss. . . may bring an action individually, ***but not in a representative capacity***." (emphasis added)). Thus, Plaintiffs' SCUPTA class action claim should also be dismissed.

## CONCLUSION

For the foregoing additional reasons, all of Plaintiffs' claims against Pinnacle should the dismissed with prejudice.[4]

Dated: January 11, 2021	GORDON & REES LLP

By	*/s/Henry W. Frampton, IV*
Henry W. Frampton, IV (Fed. 10365)
E-mail: hframpton@grsm.com
Peter G. Siachos (Fed. 07591)
E-mail: psiachos@grsm.com
Victoria T. Kepes (Fed. 13000)
E-mail: vkepes@grsm.com
40 Calhoun Street, Suite 350
Charleston, SC  29401
Telephone: 843.278.5900
*Attorneys for Defendant Pinnacle Property Management Services, LLC*

---

[4] The Court should dismiss with prejudice because, as shown above, Plaintiffs cannot amend their Complaint in compliance with Rule 11 such that it would state a claim for relief, since the language of the statutes and the Leases preclude liability. Plaintiffs' attempt to seek leave to amend in the alternative, therefore, should also be denied. *See Matrix Capital Management Fund, LP v. BearingPoint, Inc.*, 576 F>3d 172, 293 (4th Cir. 2009) (a dismissal without prejudice is appropriate where "an allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency").