IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| SARAH ZITO; ALVARO SARMIENTO, JR.; MARK SHINN; and DANIEL BERMUDEZ, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STRATA EQUITY GROUP, INC. n/k/a STRATA EQUITY GLOBAL, INC.; STRATA AUDUBON, LLC; STRATA VERIDIAN, LLC; PINNACLE PROPERTY MANAGEMENT SERVICES, LLC; and CONSERVICE, LLC,<br><br>Defendants. | Civil Action No.: 2:20-cv-3808-BHH<br><br>**DEFENDANTS' JOINT REPLY IN SUPPORT OF MOTION TO DISMISS** |

Defendants Strata Equity Group, Inc. n/k/a Strata Equity Global, Inc., Strata Veridian, LLC, Pinnacle Property Management Services, LLC, and Conservice, LLC (collectively, "Defendants") respectfully submit this Reply in Support of the Joint Motion to Dismiss.

## **INTRODUCTION**

As Defendants demonstrated in the joint motion to dismiss, the Complaint attempts to end-run the jurisdiction of the South Carolina Public Service Commission (the "Commission"), which regulates water and sewer utilities in South Carolina. Plaintiffs' claims, however, should be dismissed for failure to exhaust their exclusive administrative remedies and because Defendants are not public utilities under the law. Plaintiffs' response has done nothing to undermine those conclusions. Instead, Plaintiffs make a cheap ploy for sympathy, waxing poetic about the "unfairness" of the rates charged by Defendants. In so doing, however, Plaintiffs only serve to

1

demonstrate that their claims belong in front of the Commission as the only entity empowered to determine if a public utility is charging unfair or unauthorized rates.

South Carolina law commits the regulation of public utilities to the Commission and provides a clear set of administrative remedies for Plaintiffs' claims. Nothing in South Carolina law, nor anything in the cases cited by Plaintiffs, allows them to avoid the administrative process. Moreover, under South Carolina law, when the law provides a clear set of administrative remedies, those remedies and the judicial review obtainable through the appellate process are exclusive, and there is no private right of action in court. The mere fact that Plaintiffs may not like the administrative remedies available to them is not a cognizable excuse for skipping that process. Accordingly, Plaintiffs' claims should be dismissed.

Even if the Court considers the Complaint on the merits (and it should not), Defendants are not public utilities because both the Commission and the plain language of the statute clearly exclude apartment complexes, who simply provide billing services for utilities. In their response, Plaintiffs cite a vacated order from the commission and selectively apply language from another to misconstrue the Commission's holdings on the issue. Plaintiffs fail to provide any real counter-argument to the plain language of the statute, but instead rely on irrelevant analogies and newfound allegations. Accordingly, Plaintiffs' claims fail as a matter of law and should be dismissed.

## ARGUMENT

### A. Plaintiffs Failed to Exhaust Their Administrative Remedies Before the Commission, and Those Remedies Are Exclusive

As an initial matter, Plaintiffs spend an inordinate amount of space in their response attempting to refute a jurisdictional argument Defendants did not make. To be clear, Defendants have not asked this Court to dismiss for want of subject matter jurisdiction. Rather, Defendants are entitled to dismissal because Plaintiffs have failed to exhaust their administrative remedies,

2

which are exclusive and preclude Plaintiffs from stating a claim on which relief may be granted.

### 1. The Utility Statutes and Regulations Provide an Administrative Remedy

Plaintiffs failed to exhaust the clear administrative remedies available before the Commission. Even Plaintiffs admit that "the Commission has the exclusive jurisdiction, subject to judicial review, to determine the reasonable rates and standards of regulated utilities in South Carolina." (Pl. Memo. at 14 (citing *S.C. Pub. Serv. Auth. v. Carolina Power & Light Co.*, 244 S.C. 466, 137 S.E.2d 507 (S.C. 1964))). Since Plaintiffs do not dispute that they have failed to exhaust any such remedy, the Complaint is subject to dismissal.

Despite agreeing that the Commission has exclusive jurisdiction, Plaintiffs argue that Defendants have not identified any administrative remedy. In doing so, Plaintiffs purposefully ignore the administrative remedy provided in the public utility statutes. South Carolina law vests the Commission with broad authority to supervise and regulate public utilities, S.C. Code Ann. § 58-3-140(A), and the Commission has promulgated regulations that specifically address how to remedy a water or wastewater utility billing a customer outside of its approved rates. S.C. Code Ann. Reg. §§ 103-533, 103-733. The Commission is further vested with authority to hear and decide issues of whether an entity is operating a public utility and any complaints, including those "regarding the reasonableness of any rates or charges." *See In re: Rule to Show Cause on Submeterers*, Order No. 2003-214, 2003 WL 23325952 (S.C.P.S.C. April 15, 2003) (hereinafter, "*In re: Submeterers*"); S.C. Code Ann. § 58-5-270. Accordingly, any argument that Plaintiffs lack an administrative remedy ignores the plain text of the applicable statutes, regulations, and prior decisions of the Commission addressing these very issues.[1]

---

[1] In response to Defendants' assertion that counsel could not locate a case wherein a court declined to require exhaustion before the Commission, Plaintiff cites to a case from 1949 interpreting a vastly different statute from the one in force today and considering issues involving competition between public utilities, not unlawful rates or authorization to operate as a public utility. (*See* Pl.

Here, the basis of every claim in the Complaint is an allegation that Defendants charged unreasonable / unauthorized rates as public utilities. Plaintiffs' claims, therefore, are fully within the jurisdiction and power of the Commission, and the contention that no such administrative remedy exists is demonstrably false—the available administrative remedy is to follow the process set forth in the statute and to file a claim in front of the Commission.[2]

### 2. Plaintiff's Attempt to Avoid the Administrative Process Is Not Supported by the Case Law or the Prior Decisions of the Commission

In support of the argument that they are not required to exhaust their administrative remedies, Plaintiffs cite a series of inapplicable case law and prior decisions of the Commission. For example, Plaintiff's cite *Capital City Ins. Co. v. BP Staff, Inc.*, 382 S.C. 92, 674 S.E.2d 524 (S.C. Ct. App. 2009), for the proposition that exhaustion does not apply where the agency does not have the power to address the claims at issue. That opinion, however, does not remotely apply to this case.

In *Capital City*, a workers' compensation insurer sued its insured employer for five alleged

---

Memo at 15 (citing *S.C. Elec. & Gas Co. v. S.C. Pub. Serv. Auth.*, 215 S.C. 193, 54 S.E.2d 777 (S.C. 1949)). That case, however, did not decline to require exhaustion, it merely found that the competition was not covered under the then-current statute. *S.C. Elec. & Gas Co.*, 215 S.C. 193, 54 S.E.2d 777. It is therefore, inapplicable here.

[2] Plaintiffs attempt to confuse this issue by arguing that the Court has jurisdiction to interpret statutes, even where the statutes governing the power of administrative bodies, is a red herring. (*See* Pl. Memo. at 15). In every case Plaintiffs cited, the court was either interpreting a statute on appeal from a decision from the agency or commission itself, or else exploring the differing roles of the judiciary and the legislature in interpreting statutes. *See U.S. American Trucking Ass'ns*, 310 U.S. 534, 541 (1940) (considering the jurisdiction of an agency on appeal from a petition filed with that agency); *Phillips Petroleum Co. v. State of Wis.*, 347 U.S. 672 (1954) (interpreting a statute on appeal from a decision by the commission whose power the statute defines); *Brown v. Bi-Lo., Inc.*, 354 S.C. 436, 438, 581 S.E.2d 836, 837 (2003) (interpreting Workers' Compensation Act on appeal from the Workers' Compensation Commission); *Lindsay v. National Old Lin Ins. Co.*, 262 S.C. 621, 625, 207 S.E.2d 75, 76 (1974) (discussing the difference in the role of the courts and the legislature); *Boatwright v. McElmurray*, 247 S.C. 199, 207, 146 S.E.2d 716, 720 (1966) (same). These cases therefore, are either entirely irrelevant, or else further drive home the argument that the Commission is the correct place for Plaintiffs to assert their claims.

4

breaches of contract, including non-payment of premium, and for fraud. 382 S.C. at 96, 674 S.E.2d at 526. Previously, the employer had filed an administrative action challenging the experience modification rate applied by the insurer under S.C. Code Ann. Reg. § 69-54, and the administrative decision affirming the insurer's actions was on appeal when the civil case was filed. *Id.* at 97, 674 S.E.2d at 527. In *Capital City*, it was not disputed that the experience modification rate was subject to administrative determination, but the insurer filed suit during the administrative appeal because the employer had not paid premium *even under the employer's calculation of the appropriate experience modification rate*. *Id.* at 97 & n.1, 674 S.E.2d at 527 & n.1. No one contended that the administrative process could remedy a complete non-payment of premium (it could merely determine the appropriate rate), and the insurer's statute of limitations was about to run. *Id.* at 101-04, 674 S.E.2d at 529-31. Accordingly, the court held that the employer's claims for breach of contract and fraud were "not wrongs for which the administrative scheme was designed to redress" and thus allowed the suit to avoid dismissal. *Id*. at 103, 674 S.E.2d at 530.

Here, however, the wrongs Plaintiffs allege are precisely the types of claims the Commission is empowered and required to address—whether an entity is a regulated public utility, what rates it is authorized to charge, and how to remedy alleged overcharges. Because the sole issues in the case are issues committed to an administrative agency, *Capital City*, is inapposite.[3]

Plaintiff also cites to *Charleston Trident Home Builders, Inc. v. Town Council of Town of Summerville*, 369 S.C. 498, 632 S.E.2d 864 (S.C. 2006). In *Charleston Trident*, the plaintiff challenged the validity of a town ordinance permitting the assessment of a development impact

---

[3] Notably, in *Capital City*, the Court specifically noted that a stay would likely be appropriate to allow the administrative process to conclude before allowing the circuit court case to progress. *Id.* at 103, 106-07, 674 S.E.2d at 529, 532. Accordingly, even if *Capital City* applied (and it does not), it would still require Plaintiffs to exhaust their remedies in front of the Commission before progressing in any material fashion in this Court.

fee and permitting the refund of the fee under certain circumstances. *Id.* at 501, 632 S.E.2d at 866. The court held that a challenge to the validity of the ordinance itself (rather than to the administration or application of the ordinance) was not subject to administrative review. *Id.* at 502, 632 S.E.2d at 867.

No such issue exists in this case. Plaintiffs do not allege the invalidity of any statute or regulation regarding public utilities; they merely allege that Defendants charged unauthorized and unreasonable rates under the public utility statutes. Thus, *Charleston Trident* is also inapposite.

Plaintiffs further appear to argue that any claim for money damages is somehow exempt from the requirement to exhaust administrative remedies, but there is no support for this proposition either. Plaintiffs cite *Martin v. Carolina Water Services, Inc.*, 273 S.C. 43, 254 S.E.2d 52 (S.C. 1975), which is inapplicable. In *Martin*, the plaintiff sold a water and sewer system to the defendant *before the system was regulated by the Commission*, and sued the defendant for failing to honor the contract. *Id.* Because the system was not regulated at the time of the purchase, the court held that it had jurisdiction, and exhaustion was not required. *Id.* at 46, 254 S.E.2d at 53. To be clear, the *Martin* decision did not hold that the claims were not exempt from exhaustion because money damages were claimed, but rather because the case involved enforcement of a purchase contract that was entered into before the Commission began regulating the utility. *Id.* Thus, *Martin* has no application here.

Plaintiffs' position also finds no support in the prior rulings of the Commission itself. Plaintiffs cite to a number of orders where the Commission declined to order money damages for relief, but they ignore the basis on which the Commission denied relief in those cases—namely that the underlying claims in those cases were entirely unrelated to the entity's status as a public utility or the rates charged by a public utility. *See In re: Berry*, Order No. 2019-874, 2019 WL

6

7342325 (S.C.P.S.C. Dec. 18, 2019) (declining to consider claims against an energy company for physical damage to an underground electrical line); *In re: Alex*, Order No. 2018-625, 2018 WL 4635879 (S.C.P.S.C. Sept. 19, 2018) ("This Commission cannot grant the specific relief sought [of money damages due to property damage]."); *In re: Bowens*, Order No. 2009-619, 2009 WL 9567563 (S.C.P.S.C. Aug. 31, 2009) (declining to exercise jurisdiction over Fair Credit Reporting Act claims and negligence unrelated to rate setting); *In re: Noller*, Order No. 2019-523, 2019 WL 3306757 (S.C.P.S.C. July 17, 2019) (noting the Commission's inability to grant money damages to reimburse customers for replacement and repairs to water and sewer mains after a Hurricane);[4] *In re: Tarmann*, Order No. 2008-700, 2008 WL 9903506 (S.C.P.S.C. Oct. 9, 2008) (stating that the Commission has no ability to award damages for the "taking" of real property by a utility company).

Not one of these orders addressed the Commission's authority over the issues at the heart of this case: whether an entity qualifies as a public utility and whether it charged an unauthorized or unfair rate. Indeed, none of them have anything to do with a public utility allegedly charging improper or unauthorized rates. Here, Plaintiffs allege that an improper rate was charged by Defendants. Plaintiffs do not allege property damage or any damages other than those that arise

---

[4] *In re: Noller* merits some explanation because the Commission's order is so sparse. In that case, the complainant homeowners sought reimbursement for post-hurricane repairs that they made to utility equipment under the theory that their contract with the utility placed the responsibility for such repairs on the utility. *See* Complaint, *In re: Noller*, Docket No. 2018-364-WS (S.C.P.S.C. 2018) (attached hereto as Exhibit A). They further contended that the contract was not approved by the Commission, as it should have been. The Commission dismissed the action because the lack of approval had nothing to do with the real claim—one for breach of the contract. In this case, on the other hand, the entire *raison d'etre* of Plaintiffs' claim is that Defendants charged unapproved rates, the remedy for which falls squarely within the Commission's regulatory power authority. *See, e.g.*, S.C. Code Ann. §§ 103-533, 103-733. Moreover, it should be noted that *In re: Noller* is currently on appeal to the South Carolina Court of Appeals, so any reliance on it at this point is premature.

7

out of the allegedly unauthorized or unreasonable rates. The reliance on these orders, therefore, is misplaced.[5] Instead, the plain language of the statutory scheme and regulations provide an administrative remedy that must be exhausted, and neither the case law nor the Commission's prior orders say otherwise.

### 3. The Administrative Remedy Is Exclusive Because the Utility Laws Do Not Create a Private Right of Action

The remedy provided by the administrative process is exclusive. Under South Carolina law, when it is clear from the language and structure of a statute that the legislature intended to create an administrative remedy, rather than a private right of action, no such private right of action is permitted. *See, e.g. Masterclean, Inc. v. Star Ins. Co.*, 347 S.C. 405, 415, 556 S.E.2d 371 (S.C. 2001). Plaintiffs erroneously argue that the *Masterclean* opinion does not discuss administrative remedies, but ignore the language of the opinion. In *Masterclean*, the court analyzed the Insurance Trade Practice Act, stating that it provides an administrative remedy before the Department of Insurance and precludes a civil action in court. *Id.* The Court concluded that "[t]he statute clearly manifests legislative intent to create an administrative remedy and **not** a private right of action." *Id.* (emphasis added). Accordingly, the administrative process is exclusive, and no private right of action exists. *Masterclean*, 345 S.C. at 414, 556 S.E.2d at 377.

The same is true here. As set forth above, the utility statutes and regulations clearly create

---

[5] Plaintiffs also cite a few cases from other jurisdictions to attempt to establish a mystical "legal principle" that courts are the only place where money damages can be sought. (Pl. Memo. at 22.) Those cases are inapposite because they involve claims other than those relying on the reasonableness of rates and interpret the statutes and regulations of another state. *See Penny v. Southwestern Bell Telephone Co.*, 906 F.2d 183, 185-86 (5th Cir. 1990) (noting the claim does "not involve[e] the regulation or application of its rates"); *Nelson v. Public Service Co.*, 119 N.H. 327, 330 (1979) (exercising jurisdiction over a pure legal issue regarding the timing of the imposition of a rate); *Lowell Gas Co. v. A.G.*, 377 Mass. 37, 45 (1979) (interpreting the reach of a utility commission under Massachusetts law).

an administrative process for handling grievances with entities alleged to be public utilities charging unauthorized or unfair rates. Nothing in those statutes or regulations remotely suggests that the General Assembly intended to create a private right of action in court for such claims, and Plaintiffs have cited nothing to support such claims. Therefore, no private right of action exists.

Plaintiffs cannot avoid this conclusion by attempting to disguise claims for violation of the utility laws as common law claims. The South Carolina Supreme Court specifically rejected this kind of argument in *Wogan v. Kunze*, 366 S.C. 583, 602, 623 S.E.2d 107, 117 (S.C. 2005), in which the plaintiff tried to assert a negligence claim based on an alleged violation of the Medicare Act, a federal law that provided no private right of action. There, the Court held that when a statute does not create a private right of action, a plaintiff cannot attempt to sue for a violation of the statute "under the rubric" of a common law claim. *Id.* Put another way, there is no common law duty from which a common law claim may flow "unless an implicit right of action exists" under the statute allegedly violated.[6] *Id.* at 603, 623 S.E.2d at 118.

Here, Plaintiffs are attempting to do the very thing *Wogan* prohibits: create a common law claim from the violation of a statute with no private right of action. Each of the causes of action in the Complaint specifically rely on the utility statutes as the source of Defendants' alleged duties. (*See* Compl. ¶¶ 87 (the breach of contract claim alleges that "[t]he allocation rate charged by Strata Audubon and Strata Veridian was not charged in accordance with state statutes"); 96 (the

---

[6] Plaintiffs also cite to three cases for the vague propositions that statutes should not be extended to restrict the common law or repeal other statutes and that the common law should not be "displaced" without clear legislative intent. *See Grier v. AMISUB of S.C., Inc.*, 397 S.C. 532, 536, 725 S.E.2d 692, 696 (S.C. 2012); *Aajker v. City of Myrtle Beach*, 388 S.C. 129, 694 S.E.2d 213 (S.C. 2010); *Roche v. Young Bros., Inc. of Florence*, 332 S.C. 75, 81, 504 S.E.2d 311, 314 (S.C. 1998). Defendants, however, have not argued that the utility statutory scheme restricts or displaces the common law or repeals another statute. Plaintiffs are not really asserting common law claims; they are attempting to mask claims that Defendants violated the public utility laws by disguising them under the guise of common law torts and other statutory claims, which is precisely what *Wogan* and cases like it prohibit.

Residential Landlord Tenant Act claim alleges "[t]he allocation rate, new account fees, monthly administrative billing fees and final fees… are prohibited by law as a public utility rate not approved by the Public Service Commission"); 98-102 (claim under S.C. Code Ann. § 58-5-370); 105 (negligence claim alleges a duty to "provide water and sewerage only at rates approved by the [Commission]"); 113-118 (unjust enrichment claim alleges the rates charged were unlawful); 121 (Unfair Trade Practices Act claim based on allegation that the rates charged were "illegal"); 135 (request for declaratory judgment alleges the rate was "unlawful" and that Defendants were public utilities under the jurisdiction of the Commission); 137 (claim for injunctive relief based on allegation of "wrongful charging of" water and sewer rates)). Because Plaintiffs cannot, through creative pleading, create causes of action under a statute for which none exists, Plaintiffs' claims should be dismissed for failure to exhaust.

### 4. Plaintiffs' Dissatisfaction with the Administrative Remedy Created by the General Assembly Does not Change the Exhaustion Requirement, Nor Does it Entitle Plaintiffs to a Stay

Contrary to their argument, Plaintiffs cannot bypass the administrative process simply because the administrative remedy provided by the General Assembly is not the remedy they want. Plaintiffs contend that they are not required to exhaust administrative remedies because not all of the remedies sought in the Complaint are available in front of the Commission, but they fail to cite to a single case or order supporting this proposition. Rather, it is well-settled that a mere "difference in remedies" between what may be available in the administrative process and what may be available in court is not a basis for excusing the requirement to exhaust administrative remedies. *Allen v. S.C. Alcoholic Beverage Control Comm'n*, 321 S.C. 188, 195, 467 S.E.2d 450, 454 (S.C. Ct. App. 1996) (holding that a "difference in remedies" between those available through the administrative process and those purportedly available in court "does not eliminate the exhaustion requirement"). Thus, the mere fact the Commission may not have the power to grant

10

every remedy requested by Plaintiffs does not excuse a failure to exhaust administrative remedies.

Plaintiffs further argue that even if they are required to exhaust administrative remedies, a stay is the appropriate remedy, but Plaintiffs fail to address the fact that this dispute will never reach this court, even if they exhaust their remedies. Instead, any appeal from the Commission would be directly to the Court of Appeals. *See* S.C. Code. Ann. § 58-5-340. Thus, a stay is not appropriate in this case because these claims will never be heard in a trial court.[7]

### B.     The Commission Has Ruled that Apartment Complexes Are Not Public Utilities

Alternatively, even if this Court does not require Plaintiffs to exhaust their administrative remedies (and it should), all of Plaintiffs' claims still fail because they are all based on the notion that Defendants are public utilities. The Commission, however, has expressly held otherwise. Notably, Plaintiffs' argument that Defendants are public utilities is based on a **vacated** order of the Commission. (*See* Pl. Memo. at 9 (citing Order No. 1999-307)). Black's Law Dictionary defines "vacate" as, "[t]o nullify or cancel; make void; invalidate." Black's Law Dictionary (11th ed. 2019). In *In re: Submeterers*, the Commission expressly vacated Order 1999-307, meaning that Order 1999-307 is void and invalid, with no further effect. *In re: Submeterers* ("[W]e hereby

---

[7] Plaintiff cites to three cases without explanation to support this argument, but none of those cases bears any passing relationship to the issue of whether a stay or a dismissal is the appropriate remedy. In fact, one of the cases specifically stated that if a plaintiff has failed to exhaust administrative remedies, the appropriate remedy is dismissal. *See Reiter*, 507 U.S. at 268 (noting that until the plaintiff has exhausted administrative remedies, "suit is premature and must be dismissed," but holding the doctrine of exhaustion of administrative remedies did not apply under those facts). All of the other cases address issues easily distinguishable from the instant case. *See U.S. v. Philadelphia Nat. Bank*, 374 U.S. 321, 353 (1963) (considering whether approval of a merger by a bank agency constitutes immunity from suit based on that merger); *U.S. v. W. Pac. R.R. Co.*, 352 U.S. 59, 63-64 (1956) (no mention of whether a stay or dismissal is the appropriate action); *Bulldog Trucking, Inc.* 66 F.3d 1890 (M.D.N.C. 1995) (holding that a stay is the appropriate remedy because, by statute, a district court retains jurisdiction over cases that must first be referred to the Interstate Commerce Commission); *Gemini Enterprises, Inc. v. WFMY Television Corp.*, 470 F. Supp. 559, 572 (1979) (noting that a stay is appropriate where an agency has primary jurisdiction because the claim will be heard by the court upon review).

vacate Order No. 1999-307."). Any reliance on Order 1999-307 is therefore wholly misplaced.

Plaintiffs admit that Order 1999-307 has been vacated, but read some qualifier into the vacation that simply is not there. Had the Commission meant to vacate the prior order in part, it could have done so. In fact, the preceding sentence bolsters the complete nature of the vacation. The order states: "Since submeterers of water and wastewater do not meet the definition of a 'public utility' under our statutes, this Commission does hereby deny and dismiss the Rules to Show Cause issued by us. **Further, and following this conclusion, we hereby vacate Order No. 1999-307**. . ." *In re: Submeterers* at 10 (emphasis added). As such, Order 1999-307 was vacated in whole and Plaintiffs' reliance thereon is in error.

As described more fully in the Motion, *In re: Submeterers* held that the "activities of measuring the commodity and providing billing functions do not make submeterers 'public utilities' for purposes of regulation by this Commission." Here, Defendants are accused of just that—measuring the water and sewer usage and billing the tenants for that usage. The fact that the measurement of the services is done using an allocation method does not change that fact. *In re: Submeterers* does not limit its ruling only to submeterers who use individual meters to measure the usage of each individual tenant.

Plaintiffs also misconstrue language in *In re: Seahorse Investment*, Order No. 2008-725, 2008 WL 9903512 (S.C.P.S.C. Oct. 28, 2008), in an attempt to support their nonsensical conclusion. The Commission in *In re: Seahorse Investment* considered approval of a settlement agreement between the Office of Regulatory Staff and the owner of a mobile home park. *Id.* The settlement agreement specifically stated that the mobile home park owner be classified as a submeterer. *Id.* In agreeing to classify the mobile home park owner as a submeterer, rather than a public utility, the Commission mentioned certain procedures followed, one of which being that

the units have individual submeterers. *Id.* Nowhere in that opinion did the Commission hold that the *only* reason for the classification was the existence of the individual submeterers. *Id. In re: Seahorse Investment* merely agreed with the classification set forth in the settlement agreement up for approval and was decided only as to the set of facts in that claim. It has no precedential value as to whether Defendants might be considered a public utility.[8]

Finally, Defendants are not a public utility because the text of the statutes does not qualify them as such. Neither an apartment complex nor its property manager or billing company, is "furnishing" or "supplying" water or sewer. As demonstrated in the Motion, the Commission has specifically held that an apartment complex is not a "public utility" where it does not "take possession of the water," and merely "passes through utility costs to [] residents," it is not a public utility under the statutes. *See In re: Submeterers*, at 10. Here, Plaintiffs have not alleged any fact to even hint at Defendants' possession of the water or sewage. Instead, Defendants merely pass on the costs of utilities to its residents.

Plaintiffs misconstrue Defendants' argument and claim that the Complaint alleges that Defendant "takes possession" of the water, but again fail to cite to the Complaint because no such allegations are contained therein. (Pl. Memo. at 17). Plaintiffs also state without citation that the Complaint alleges that Defendants own the pipes that carry the water and sewage from the utility meter to the tenants. (*Id.*). No such allegations can be found in the Complaint. However, even if

---

[8] Plaintiffs also attempt to argue that Defendants had a practice of billing tenants for some portion of the water and sewer usage in the common areas of the properties, and that such a practice is somehow unlawful. (Pl. Memo. at 13). In doing so, Plaintiffs fail to cite to any such allegation in the Complaint because none exists, and Plaintiffs cannot amend the Complaint through briefing. *Southern Walk at Broadlands Homeowner's Ass'n Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy.") As such the Court should ignore the allegations regarding charges for common areas. Regardless, there is nothing in the Residential Landlord Tenant Act or elsewhere in South Carolina law that prohibits charging residents for utilities in common areas.

any of these allegations were in the Complaint (and none of them are), Plaintiff's argument is far-fetched and unsupported by any logical reasoning. Whether Defendants own the pipes has no bearing as to whether they took possession of the water or sewage within the pipes. By way of analogy, the "owner" of a highway does not "take possession" of the cars driving upon them merely because they use the highway to get from one destination to another.[9]

Plaintiffs also attempt to argue that the issue of possession is a factual matter to be determined at a later time, but fail to provide an explanation of what facts are needed to make this determination. Regardless, there is no factual matter to consider since Plaintiffs have not alleged any facts sufficient to plausibly allege possession or anything close to it. Moreover, even if Defendants owned the pipes, Defendants clearly still did not "take possession" of the water or wastewater, but merely allowed them to be conveyed from an actual public utility to a tenant.

For all of these reasons, Defendants are not public utilities as a matter of law. As such, all of Plaintiffs' claims fail to state a claim, since each relies on the allegation that the rates charged were illegal rates, and the statutory scheme prescribing utility rates only applies to public utilities.

## CONCLUSION

For the foregoing reasons and those set forth in the motion, all of Plaintiffs' claims should be dismissed.

---

[9] Plaintiffs attempt to make an analogy in their brief where Company A agrees to provide widgets to customers, then contracts with Company B to deliver Company B's widgets to its customers. This analogy has no relationship to the instant case. Defendants do not contract with the water and sewer providers to purchase some certain amount of each before turning around to sell them to the residents. Instead, the residents receive the utilities from the utility company directly at their own request, *i.e.* they can use the utilities when they want them and as much as they want, and they are billed based on an agreed-upon allocation formula.

Dated:  January 11, 2021                    GORDON & REES LLP

By    */s/Henry W. Frampton, IV*
Henry W. Frampton, IV (Fed. 10365)
E-mail: hframpton@grsm.com
Peter G. Siachos (Fed. 07591)
E-mail: psiachos@grsm.com
Victoria T. Kepes (Fed. 13000)
E-mail: vkepes@grsm.com
40 Calhoun Street, Suite 350
Charleston, SC  29401
Telephone: 843.278.5900
*Attorneys for Defendant Pinnacle Property Management Services, LLC*


*/s/Kevin A. Hall*
Kevin A. Hall (Fed. 5375)
E-mail: kevin.hall@wbd-us.com
R. Andrew Walden (Fed 11845)
E-mail: Andrew.Walden@wbd-us.com
Womble Bond Dickinson (US) LLP
1221 Main Street, Suite 1600
Columbia, SC  29201
Telephone: 803.454.6504
*Attorneys for Conservice, LLC*

*/s/Kevin K. Bell*
Kevin K. Bell (Fed. 5854)
E-mail: kbell@robinsongray.com
Robinson Gray Stepp & Laffitte, LLC
P.O. Box 11449
Columbia, SC  29211
Telephone: 803.227.1111
*Attorney for Strata Equity Group, Inc. n/k/a Strata Equity Global, Inc., Strata Audubon, LLC, and Strata Veridian, LLC*