IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Sarah Zito; Alvaro Sarmiento, Jr.; Mark Shinn; and Daniel Bermudez, on behalf of themselves and all others similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>Strata Equity Group, Inc. n/k/a Strata Equity Global, Inc.; Strata Audubon, LLC; Strata Veridian, LLC; Pinnacle Property Management Services, LLC; Wendi Dami-Vazquez; Jacinta Williams; and Conservice, LLC,<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 2:20-cv-3808-BHH<br><br>**ORDER** |

Plaintiffs Sarah Zito ("Zito"), Alvaro Sarmiento, Jr. ("Sarmiento"), Mark Shinn ("Shinn"), and Daniel Bermudez ("Bermudez") (collectively referred to as "Plaintiffs") filed this proposed class action in the Berkeley County Court of Common Pleas against Defendants Strata Equity Group, Inc., now known as Strata Equity Global, Inc. ("Strata Equity"); Strata Audubon, LLC ("Strata Audubon"); Strata Veridian, LLC ("Strata Veridian") (collectively referred to as "Strata Defendants"); Pinnacle Property Management Services, LLC ("Pinnacle"); Wendi Dami-Vazquez; Jacinta Williams; and Conservice, LLC ("Conservice") (collectively referred to as "Defendants").[1] In their proposed class action complaint, Plaintiffs allege that Defendants provide water and sewer services to their tenants, including Plaintiffs, through a patently unfair and illegal allocation formula, and that

---

[1] Plaintiffs voluntarily dismissed Wendi Dami-Vazquez and Jacinta Williams on December 8, 2020. (ECF No. 19.)

Defendants are liable because they act as a regulated public utility but charge rates not approved by the South Carolina Public Service Commission ("the Commission"). Plaintiffs' complaint includes claims for (1) breach of contract; (2) violations of the South Carolina Residential Landlord and Tenant Act; (3) violation of S.C. Code Ann. § 58-5-370; (4) negligence; (5) unjust enrichment/quantum meruit; (6) violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"); (7) declaratory judgment; and (8) injunctive relief.

Defendant Pinnacle removed the case to this Court on October 29, 2020, and on November 30, 2020, Defendants filed a joint motion to dismiss Plaintiffs' complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 17.) The same day, Defendant Pinnacle also filed a separate motion to dismiss raising additional grounds for dismissal. (ECF No. 18.) Plaintiffs filed responses in opposition to Defendants' motions, and Defendants filed replies. After review, and for the reasons set forth herein, the Court grants Defendants' joint motion to dismiss (ECF No. 17) and dismisses this case without prejudice based on Plaintiffs' failure to exhaust their available administrative remedies.

## **BACKGROUND**

According to Plaintiffs' complaint, Strata Audubon owns and leases the Audubon Park Apartments ("Audubon apartments") in Berkeley County, South Carolina–a property consisting of 13 apartment buildings and more than 250 apartments–and Plaintiffs Zito and Sarmiento lease or leased an Audubon apartment. (ECF No. 1-1 ¶¶ 1-2, 13, 15.) Similarly, Strata Veridian owns and leases the "Grove Apartments" ("Veridian apartments") in Spartanburg County, South Carolina–a property consisting of 13 buildings and more than 175 apartments–and Plaintiffs Shinn and Bermudez lease or leased a Veridian apartment. (*Id.* ¶¶ 3-5, 30, 32-33.) Plaintiffs assert that Strata Equity owns, controls, and directs Strata

Audubon and Strata Veridian, and that Pinnacle manages the Audubon and Veridian apartments for the Strata Defendants. (*Id.* ¶¶ 6-7.) Plaintiffs further assert that Conservice, through a contract with the Strata Defendants, calculates and bills tenants at the Audubon and Veridian apartments for water and sewer services. (*Id.* ¶ 10.)

The lease entered into between Strata Audubon and Zito and Sarmiento ("the Audubon lease") includes a "Utility and Services Addendum," which provides that water and sewer utilities would be billed according to an allocation formula rate based on the number of persons residing in the apartment. (*Id.* ¶¶ 16-21; ECF No. 17-1 at 11-12; ECF No. 17-2 at 11-12.) Similarly, the leases entered into between Strata Veridian and Plaintiffs Shinn and Bermudez ("the Veridian leases") include a "Utility and Services Addendum," which provides that water and sewer utilities would be billed according to an allocation formula rate based on a combination of the square footage of the apartment unit and the number of persons residing in the apartment unit. (ECF No. 1-1 ¶¶ 32-39; ECF No. 17-2 at 11-12; ECF No. 17-3 at 11-12.)[2] Plaintiffs state that they "brought this action asserting Defendants are liable because they act as a regulated utility but charge rates and fees not approved by the Public Service Commission [ ], breached their duties to Plaintiffs and the tenants by charging an inaccurate and unfair rate, engaged in an unfair practice by charging an inaccurate and unfair rate, and were unjustly enriched by tenants' payment of the rates and fees." (ECF No. 29 at 2.)

---

[2] Although Plaintiffs do not attach copies of the leases to their complaint, Defendants submitted them as exhibits to their motions to dismiss, and the Court may properly consider them in connection with Defendants' motions to dismiss, as the leases are specifically referenced in and clearly integral to the complaint.

**STANDARD OF REVIEW**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) examines the legal sufficiency of the facts alleged on the face of a plaintiff's complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when the factual content allows the court to reasonably infer that the defendant is liable for the misconduct alleged. *Id.* When considering a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Supreme Court has explained that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Twombly*, 550 U.S. at 678.

**DISCUSSION**

In their joint motion to dismiss, Defendants assert that Plaintiffs' complaint "attempts to end-run the jurisdiction of the South Carolina Public Service Commission [ ], which regulates water and sewer utilities in South Carolina." (ECF No.17 at 1-2.) According to Defendants, Plaintiffs' complaint is procedurally improper because Plaintiffs failed to exhaust their exclusive administrative remedies before the Commission. Additionally, Defendants assert that Plaintiffs' complaint is substantively improper because the Commission previously rejected the argument that apartment complexes function as public

4

utilities.

In response to Defendants' joint motion, Plaintiffs admit that "the Commission has the exclusive jurisdiction, subject to judicial review, to determine the reasonable rates and standards of regulated utilities in South Carolina." (ECF No. 29 at 14.) However, Plaintiffs assert that the Commission does not have "the exclusive jurisdiction to interpret South Carolina law on when an entity is a regulated activity." (*Id.* at 15.) According to Plaintiffs, therefore, this Court can interpret the language of South Carolina's utility law without the Commission first hearing the issue, although Plaintiffs also assert that the Commission has already determined that entities engaged in the allocation formula method of providing services to tenants–such as Defendants–qualify as public utilities under S.C. Code § 58-5-10(4). Additionally, Plaintiffs assert that even if the Commission needs to first hear any issues involved in this case, this Court should stay the case rather than dismiss it. With respect to Defendants' assertion that Plaintiffs failed to exhaust their administrative remedies, Plaintiffs contend that there are no available administrative remedies and that, regardless, any administrative remedies are not exclusive. Finally, Plaintiffs argue that even if Defendants are correct that they are not public utilities under South Carolina's utility law, dismissal of the complaint is not warranted because the complaint includes claims that do not depend on whether Defendants are public utilities.

After review, the Court is not convinced by any of Plaintiffs' arguments. As an initial matter, the Court notes that Plaintiffs' final argument (that the complaint includes claims that do not depend on whether Defendants are public utilities) is contrary to Plaintiffs' own assertion that "[t]he main thrust of Plaintiffs' claims is that by providing water and sewerage to tenants, charging for that water and sewerage using an allocation formula method, and

5

then adding fees to the charge, Defendants became a regulated public utility who must receive a certificate from the South Carolina Public Service Commission ("Commission") and have the water and sewerage rates and any fees approved by the Commission." (ECF No. 19 at 7.)  Stated differently, it is clear to the Court that the basis of all of Plaintiffs' claims, at least as they are currently pleaded, is the assertion that Defendants charged unauthorized and unreasonable rates as public utilities, in violation of South Carolina's utility law.  Specifically: (1) Plaintiffs assert that Defendants breached the leases by charging unlawful water and sewer costs under South Carolina's utility law; (2) Plaintiffs allege that Defendants violated the South Carolina Residential Landlord and Tenant Act by charging water and sewer costs and fees in violation of South Carolina's utility law; (3) Plaintiffs specifically seek a penalty for unlawful water and sewer rates under South Carolina's utility law, namely, S.C. Code § 58-5-37; (4) Plaintiffs claim Defendants owed Plaintiffs a duty to provide water and sewer only at rates approved by the Commission, as required by South Carolina's utility law; (5) Plaintiffs contend that Defendants have been unjustly enriched by charging Plaintiffs water and sewer rates that were not approved by the Commission, in violation of South Carolina's utility law; (6) Plaintiffs assert that Defendants violated SCUTPA by charging water and sewer rates in violation of South Carolina's utility law, which Plaintiffs allege is an unfair trade practice; (7) Plaintiffs seek a declaratory judgment that Defendants charged Plaintiffs water and sewer rates in violation of South Carolina's utility law and that Defendants were required to submit such rates to the Commission before charging Plaintiffs; and (8) Plaintiffs request preliminary and permanent injunctive relief related to Defendants' alleged violation of South Carolina's utility law.  Thus, all of Plaintiffs' claims depend on whether Defendants are public utilities under

South Carolina's utility law, and it appears that Plaintiffs are merely attempting to disguise their claims for violation of South Carolina's utility law as ordinary tort claims and claims under other South Carolina statutes. *See Wogan v. Kunze*, 366 S.C. 583, 623 S.E.2d 107, 117 (S.C. 2005). However, the Court agrees with Defendants that Plaintiffs may not do so, because South Carolina's utility law provides exclusive administrative remedies to Plaintiffs and does not provide for a private right of action.

Specifically, South Carolina's utility law vests the Commission "with power and jurisdiction to supervise and regulate the rates and service of every public utility[3] in this State and to fix just and reasonable standards, classifications, regulations, practices, and measurements of service to be furnished, imposed, or observed, and followed by every public utility in this State." S.C. Code § 58-3-140. In addition, the law specifically vests the Commission "with power and jurisdiction to supervise and regulate the rates and service of every public utility in this State, together with the power, after hearing, to ascertain and fix such just and reasonable standards, classifications, regulations, practices and measurements of service to be furnished, imposed, observed and followed by every public utility in this State and the State hereby asserts its rights to regulate the rates and services of every 'public utility' as herein defined." S.C. Code 58-5-210. Also, the General Assembly created the South Carolina Office of Regulatory Staff ("ORS") as a separate agency to represent the public interest in proceedings before the Commission, and ORS has the power to investigate consumer complaints and initiate proceedings in its own name.

---

[3] The law defines a "public utility" to include "every corporation and person furnishing or supplying in any manner . . . water, sewerage collection, sewerage disposal . . . to the public, or any portion thereof, for compensation . . . ." S.C. Code § 58-3-10(4).

7

*See* S.C. Code § 58-4-10, *et seq.*

As previously mentioned, even Plaintiffs agree that "the Commission has the exclusive jurisdiction, subject to judicial review, to determine the reasonable rates and standards of regulated utilities in South Carolina." (ECF No. 29 at 14.) Moreover, it is clear from the plain language of the statute and from the Commission's prior orders that the Commission's jurisdiction includes the ability to hear and adjudicate consumer complaints "regarding the reasonableness of any rates or charges," S.C. Code Ann. § 58-5-270, as well as the ability to determine whether an entity is operating as a public utility. *See*, *e.g.*, *In re Rule to Show Cause on Submeterers*, Order No. 2003-214, 2003 WL 23325952 (S.C.P.C. April 15, 2003) (finding that "submeterers of water and wastewater services do not meet the statutory definition of a 'public utility' and should not therefore be regulated by this Commission as jurisdictional utilities").[4]  Thus, contrary to Plaintiffs' assertion that there were no administrative remedies available, it is clear that the General Assembly provided a comprehensive administrative process to handle grievances about alleged public utilities charging unauthorized or unfair rates.

---

[4] The parties disagree as to the meaning and effect of *In re Rule to Show Cause on Submeterers*, wherein the Commission vacated its prior Order No. 1999-37 "in which this Commission ordered a rulemaking to determine specific requirements for certification and regulation of submeterers." 2003 WL 23325952.  In the prior Order No. 1999-37, the Commission stated "[w]e believe that landlords and companies that submeter and bill tenants for water and/or wastewater services are indeed public utilities, and should be certified by this Commission." *In re Generic Proceeding Related to Sub-Metering of Electric, Water and Wastewater Services*, Order No. 1999-307 (S.C.P.C. May 4, 1999), filed at ECF No. 17-5 at 5.  Because the Commission specifically vacated Order No. 1999-37 in Order No. 2003-214, Defendants assert that the Commission has determined that apartment complexes are not public utilities.  Plaintiffs disagree with Defendants' interpretation and assert that Order No. 2003-214 is more limited and that the Commission's prior finding that the allocation formula version of submetering makes an entity a regulated utility still stands.

In the Court's opinion, this disagreement between the parties simply highlights why Plaintiffs' claims belong before the Commission in the first instance.  Stated differently, where the General Assembly has specifically vested the Commission with the jurisdiction to hear and adjudicate complaints exactly like those presented in this case, Plaintiffs must first raise their claims before the Commission before presenting them elsewhere.

Moreover, contrary to Plaintiffs' assertion that any administrative remedies would not be exclusive, there is nothing in the plain language of the statute or the legislative history to indicate that the General Assembly also intended to create a private right of action. Importantly, Plaintiffs do not challenge the validity of South Carolina's utility law; rather, they assert that Defendants' actions violate South Carolina's utility law, and the Court finds that the wrongs that Plaintiffs allege are precisely the types of claims that the available administrative remedies were designed to address. *See*, *e.g.*, S.C. Code Ann. § 58-5-270. Although Plaintiffs may be dissatisfied with the available administrative remedies, their dissatisfaction does not excuse them from first exhausting the remedies. Thus, the Court agrees with Defendants that Plaintiffs' complaint is subject to dismissal for failure to exhaust available administrative remedies.[5] *See*, *e.g.*, *Pullman Co. v. Public Service Commission*, 234 S.C. 365, 368, 108 S.E.2d 571, 572 (S.C. 1959) (finding that the court properly exercised its discretion by dismissing a declaratory judgment claim and requiring appellant to exhaust its administrative remedies before the public service commission).

## CONCLUSION

Based on the foregoing, the Court hereby grants Defendants' joint motion to dismiss[6] (ECF No. 17) and dismisses this case *without prejudice* based on Plaintiffs' failure to

---

[5] South Carolina's utility law specifically provides that "[a] decision of the commission may be reviewed by the Supreme Court or court of appeals as provided by statute and the South Carolina Appellate Court rules upon questions of both law and fact." S.C. Code § 58-5-340. Accordingly, the Court declines to stay (rather than dismiss) this case.

[6] Having granted Defendants' joint motion to dismiss based on Plaintiffs' failure to exhaust the available administrative remedies, the Court need not reach the arguments raised by Defendant Pinnacle in its separate motion to dismiss. Nevertheless, the Court simply notes for the record that it agrees with Pinnacle that Plaintiffs' complaint, as currently pleaded, lacks sufficient factual allegations *specific to Pinnacle* to state a plausible claim. *See*, *e.g.*, *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015) (holding that plaintiffs "cannot assemble some group of defendants and then make vague, non-specific allegations against all of them as a group") (citations and internal quotations omitted).

exhaust the available administrative remedies.

**IT IS SO ORDERED.**

/s/Bruce H. Hendricks
United States District Judge

September 10, 2021
Charleston, South Carolina